IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **SPORTS IMAGING PHOTOGRAPHY OF UTAH, INC.,** <br><br> Plaintiff, <br><br> vs. <br><br> **UTAH SCHOOL & SPORTS IMAGING; and CHRIS ZULLIGER,** <br><br> Defendants. | MEMORANDUM DECISION AND ORDER DENYING PRELIMINARY INJUNCTION <br><br> Case No.  2:07CV517DAK |

This matter is before the court on Plaintiff Sports Imaging Photography of Utah, Inc.'s Motion for Preliminary Injunction. The court held a hearing on that motion on October 24, 2007. At the hearing, Plaintiff was represented by Alan L. Edwards and Alec J. McGinn, and Defendants were represented by Randall B. Bateman. The court has carefully considered the memoranda, exhibits, declarations, and other materials submitted by the parties, the arguments advanced by counsel at the hearing on the motion, and the facts and law relevant to the motion. Now being fully advised, the court renders the following Order.

Plaintiff Sports Imaging of Utah moves for a preliminary injunction against Defendants Utah School and Sports Imaging and Chris Zulliger under the Lanham Act and common law trademark law. Plaintiff seeks to have Defendants enjoined from using the marks "Utah School & Sports Imaging," "Sports Imaging," and "Imaging" in connection with offering team sports photography services in the greater Salt Lake City area.

1

## I. BACKGROUND[1]

Plaintiff has been providing photography services for recreational sports leagues, scholastic sports leagues, and other athletic associations in the greater Salt Lake area for twenty seven years. Plaintiff has continuously used the mark "Sports Imaging Photography" during that time period. Plaintiff is one of the largest non-chain suppliers of sports team photography products and services in the Utah market. The Utah market is well saturated with both local and national providers. Plaintiff contends that none of the other users in this market have used the term imaging or sports imaging until Defendant entered the market in approximately November of 2006. Defendants dispute this contention.

In November of 2006, Defendant Chris Zulliger moved to Utah from Nevada for the express purpose of opening a business which provided digital imaging services for schools and sports leagues. Prior to moving to Utah, Zulliger had been a photographer in Nevada. Because there are three Zulliger siblings that own the new business, the name of the business is Z3 Creative LLC. Z3 Creative registered a "d.b.a." with the State of Utah for Utah School and Sports Imaging for the work Chris Zulliger was providing to schools and sports leagues.

Prior to April of 2007, Zulliger contends that he had never heard of Sports Imaging Photography of Utah. In April of 2007, Plaintiff and Defendants both submitted bids for team and individual sports photography to Salt Lake County. The company Plaintiff used in connection with the bid was "Sports Imaging Photography." The name used by Defendants in

---

[1]The court notes that the findings of fact and conclusions of law made by a court in deciding a preliminary injunction motion are not binding at the trial on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *City of Chanute v. Williams Natural Gas Co.*, 955 F.2d 641, 649 (10th Cir. 1992), *overruled on other grounds by Systemcare, Inc. v. Wang Labs Corp.*, 117 F.3d 1137 (10th Cir. 1997) (recognizing that "the district court is not bound by its prior factual findings determined in a preliminary injunction hearing.").

connection with their bid was "Utah School & Sports Imaging." Plaintiff was the company with the current contract with Salt Lake County at the time of the bidding process, and Plaintiff was selected as the company to receive the contract as a result of the April 2007 bidding process.

On May 25, 2007, Plaintiff's counsel sent Defendants a cease and desist letter, requesting that Defendants cease using the mark in connection with its services and that Defendants provide an accounting of the business garnered by their use of the mark. Plaintiff claims that Defendants' use of the name "Utah School & Sports Imaging" in connection with the Salt Lake County bid and others has caused or is likely to cause confusion in the market, leading potential customers of Plaintiff to believe that Plaintiff is associated with, sponsors, or endorses Defendants' services.

On May 31, 2007, Defendants sent a reply letter in which Defendants refused to stop using the mark. Defendants contend that it adopted the name Utah School & Sports Imaging because it states the services of the company, namely school imaging and sports imaging. In that regard, Defendants argue that the terms imaging, sports imaging, and sports imaging photography are generic and incapable of serving as trademarks or service marks. Defendants' letter asked Plaintiff to substantiate its claim to ownership of the allegedly generic terms.

Defendants assert that "sports imaging" is widely used as part of the name of companies which provide sports photography services. A Google search of the term "sports imaging" retrieves a result of over 14,700 hits. Among the first 200 hits are nearly twenty companies that photograph or videotape sporting events with the terms in their names. Defendants provide examples of several companies across the country that use the term, including "Action Sports Imaging," "Advanced Sports Imaging," "Cardinal Sports Imaging," "Creative Sports Imaging," etc. Defendants claim that school imaging is also frequently used.

In this action, Plaintiff sued Defendants for trademark infringement. Plaintiff does not

assert infringement with respect to a logo.  Rather, Plaintiff asserts rights in the terms "imaging," "sports imaging," and "sports imaging photography."  Plaintiff has not attempted to seek a trademark registration for the term "Sports Imaging Photography."

Plaintiff, however, has recently sought to register its logo which includes the words "sports imaging photography" in separate sized and styled fonts.  On September 19, 2007, the PTO refused Plaintiff's logo, requiring that Plaintiff expressly disclaim any right to the exclusive use of "Sports Imaging Photography."

## DISCUSSION

Plaintiff moves for a preliminary injunction enjoining Defendants from using the marks "Utah School & Sports Imaging" and "Sports Imaging" in connection with offering team sports photography services in the greater Salt Lake City area.  In order to obtain preliminary injunctive relief, the moving party must establish:

> (1) a substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991).  Because a preliminary injunction is an extraordinary remedy, the "right to relief must be clear and unequivocal." *Id.*

**A.  Likelihood of Success on the Merits**

In order to succeed in an action for common law trademark infringement, "a plaintiff must establish a protectable interest in its mark, the defendant's use of that mark in commerce, and the likelihood of consumer confusion." *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004).  The standard under 15 U.S.C. § 1125(a) is similar to the standard for

4

common law trademark infringement. Plaintiff treats the two causes of action jointly for purposes of this motion.

The Lanham Act protects against service mark infringement even if the mark in question has not been federally registered. *Donchez*, 392 F.3d at 1215. A service mark includes "any word . . . or any combination thereof . . . used by a person . . to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown." 15 U.S.C. § 1127. When suing to protect an unregistered mark, Plaintiff has the burden to show both validity and infringement unaided by presumptions. *UDK Solutions, Inc. v. Disaster Clean Up Serv.*, 2007 U.S. Dist. LEXIS 32853 (D. Utah 2007).

*1. Protectable Interest in Mark*

Plaintiff asserts that its mark is suggestive or descriptive. Defendants, on the other hand, contend that the terms are generic or, at most, highly descriptive. A suggestive mark has inherent distinctiveness. A descriptive mark "describes the product's [or service's] features, qualities, or ingredients in ordinary language or describes the use to which the product is put*." Donchez*, 392 F.3d at 1216. A generic term, which merely states the goods and services provided by an entity, cannot serve as a trademark or service mark. *First Sav. Bank, F.S.B. v. First Bank Sys.*, 101 F.3d 645, 654 (10th Cir. 1996).

It is undisputed that Plaintiffs do not have a registered mark. An unregistered suggestive mark, which has been used in commerce, or an unregistered descriptive mark, which has become associated with a particular producer through usage, is afforded protection under the common law similar to that provided to a registered mark under the Lanham Act. *Educational Dec. Corp. v. Economy Co.*, 562 F.2d 26, 29 (10th Cir. 1977). The court, however, finds no basis for

5

concluding that "Sports Imaging Photography" is a suggestive mark.

"The determination of whether a mark is descriptive requires consideration of the meaning of the term or mark to the prospective purchasers and not to the public in general." *Education Dev. Corp.*, 562 F.2d 26, 29 (10th Cir. 1977). The entire phrase, when looked at as a whole, must be generic to be denied protection. *Gilson on* Trademarks § 2.02.

Plaintiff concedes that photography is a generic term for photography services and that "sports photography" is generic as well. But, Plaintiff contends that the addition of the word "imaging" renders the marks "Sports Imaging Photography" and "Sports Imaging" distinctive in the market. The term imaging, without further explanation, can mean a variety of different things, such as, voice work, radio work, computer programming, post-production digital manipulation, health care images, etc.

Nonetheless, one of the definitions of imaging is "the production of graphic images, either from video camera or from digitally generated data." That is exactly the service that Defendants provide. "[A] term used to describe the relevant type of class of goods . . . cannot become a trademark under any circumstance." *First Sav.* Bank, 101 F.3d at 654. The widely used nature of the terms "imaging" and "sports imaging" in the sports imaging/photography business creates problems with Plaintiff's desire to have a service mark in the terms.

Even if the terms were descriptive rather than generic, Plaintiff must demonstrate that the terms have acquired a secondary meaning. *First Sav. Bank*, 101 F.3d at 654-55. For a descriptive mark to acquire a secondary meaning such that it is afforded trademark protection, "the descriptive words must have been used so long and so exclusively by one producer with reference to his goods and articles that, in the trade and to that branch of the purchasing public, the word or phrase [has] come to mean that the article is his product." *Id*. at 29-30. A plaintiff

6

may establish a secondary meaning for a name by presenting circumstantial evidence detailing: "(1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark, and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture." *Donchez*, 392 F.3d at 1218.

Plaintiff argues it has a protectable interest in the mark because it has acquired a secondary meaning through twenty-seven years of exclusive usage in the field of youth sports photography in the greater Salt Lake market. Plaintiff asserts that it has extensively and aggressively promoted and used the mark in advertising, brochures, flyers, bids, and its website. Plaintiff submits six declarations of purchasers in the Salt Lake market to demonstrate that it has established rights and considerable goodwill in the marks "Sports Imaging" and "Sports Imaging Photography." The declarations are from representatives of organizations in the Utah region who contract with photography companies to photograph sports teams, individuals, and events. The declarations state that Plaintiff is widely known and highly regarded by sports organizations within the State of Utah, both by the term "Sports Imaging Photography" and "Sports Imaging." Most of the declarations state that their respective organizations refer to Plaintiff as merely "Sports Imaging" with no confusion as to what company is meant.

Defendants contend that the six customer declarations submitted by Plaintiff are inadequate to demonstrate secondary meaning within the consuming market. A customer who has been purchasing from a company for a prolonged period of time may falsely believe that the company is well known or believe that others associate the company name as a brand identifier rather than simply a statement of the services provided. A community may refer to a particular store as "the coffee shop" or "the hot dog stand." This, however, does not give the owner of the

7

establishment a trademark or service mark in the term. "A generic term is not entitled to trademark protection no matter how closely it is associated with the product of a single proprietor.." *Girl Scouts of the United States v. The Bantam Doubleday Dell Pub. Group, Inc.*, 808 F. Supp. 1112, 1123 (S.D.N.Y. 1992).

The term "sports imaging photography" describes the service the parties provide. The term is used to identify categories of services offered by photography companies and those that specialize in printing sports posters and memorabilia. In a similar trademark application, the United States Patent and Trademark Office ("PTO") refused to register as a mark the terms "digital color imaging." The PTO noted that the "more descriptive the proposed mark, the more evidence is required to establish a secondary meaning." Also, the PTO has repeatedly found that the term "imaging" is unprotectable for photographic services and has routinely required a disclaimer for the term "sports" in photographic services.

Moreover, Plaintiff has never sought to register the terms. Rather than file for registration of any of these terms as word marks, Plaintiff chose to seek registration of its logo including these words. This conduct suggests that Plaintiff is fully aware that it has no rights in the terms "imaging," "sports imaging," and "sports imaging photography." And, even Plaintiff's attempt to register its logo was denied by the PTO and Plaintiff was required to expressly disclaim any right to the exclusive use of "Sports Imaging Photography."

At this stage of the litigation, the court cannot conclude that Plaintiff has clearly and unequivocally demonstrated that it has a secondary meaning in the terms. Plaintiff has the burden of demonstrating that it owns a service mark. *First Sav. Bank F.S.B. v. First Bank Sys.*, 101 F.3d 645, 654 (10th Cir. 1996). Accordingly, Plaintiff has failed to meet its burden of demonstrating a likelihood of success on the merits.

### B. Irreparable Harm

Because of the widespread use of the term "sports imaging" and the court's finding with respect to the likelihood of success on the merits, the court concludes that Plaintiff is not entitled to the presumption of harm. The evidence before the court demonstrates that while both parties bid for the Salt Lake County contract, Plaintiff won the contract. The court finds that Plaintiff has not met its burden of demonstrating, clearly and unequivocally, that there is actual confusion or that it has lost sales.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for preliminary injunction is DENIED. Plaintiff has not clearly and unequivocally demonstrated that it is likely to succeed on the merits of its claims or that there is irreparable harm.

DATED this 1st day of November, 2007.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge